Anthony Barnes (Bar No. 199048)
Jason Flanders (Bar No. 238007)
Email: amb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Phone: (917) 371 - 8293

Kelly Clark (Bar No. 312251)
Email: kelly@losangeleswaterkeeper.org
LOS ANGELES WATERKEEPER
120 Broadway, Suite 105
Santa Monica, CA 90401
Phone: (310) 394 - 6162

JS-6

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation, | Case No.: 2:21-cv-02211-JFWx |
| Plaintiff, | CONSENT DECREE |
| v. | |
| COAST HEAT TREATING, CO., a California corporation, | |
| Defendant. | |

## CONSENT DECREE

**WHEREAS,** Los Angeles Waterkeeper ("Waterkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Coast Heat Treating, Co. ("Coast Heat or "Defendant") owns and operates an industrial facility located at 1767 Industrial Way, Los Angeles, CA 90023 ("Facility).

**WHEREAS,** the industrial activities at the Facility consist primarily of metal heat treating including annealing, brazing, burning, hardening, heat treating, abrasive blasting, and plating of metal products. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3398— Metal Heat Treating.

**WHEREAS,** stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as

applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (5) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on November 17, 2020, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Water Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit, Water Quality Order No. 92-12-DWQ, as amended by Water Quality Order 97-03-DWQ, and as amended by Water Quality Order 2014-0057-DWQ, at the Facility;

**WHEREAS**, on March 11, 2021, Waterkeeper filed a complaint against Coast Heat in the Central District of California, Civil Case No. 2:21-cv-02211-JFW ("Complaint");

**WHEREAS**, Plaintiff's complaint alleged violations of the General Permit and CWA for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River, Queensway Bay, and Junipero Beach, and ultimately the Pacific Ocean ("Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      Waterkeeper has standing to bring this action;

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issue raised within the three (3) year term of this Consent Decree.

## I.    OBJECTIVES

6.      It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND CONSENT DECREE TERM

### A.      Agency Review of Consent Decree

8.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9.      <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10.      <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.      Effective Date and Term of Consent Decree

11.      <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry by the Court.

12.      <u>Term & Termination</u>. Provided all monetary components under the Consent Decree have been paid, this Consent Decree shall terminate in accordance with paragraph 13 unless one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of fifteen (15) days of notice by the Settling Parties that invoked Dispute Resolution that the dispute has been

fully resolved or an order of the Court resolving the dispute and terminating the Consent Decree.

13.    Subject to paragraph 12, the Consent Decree shall terminate upon the date of the first of the following events to occur (such date shall be referred to as the "Termination Date"):

**a.**    During the term of this Consent Decree, all monitoring data for four consecutive sampling events taken at an industrial discharge monitoring point identified in the SWPPP during a Qualifying Storm Event ("QSE"), as defined in the General Permit, do not constitute an exceedance of the General Permit, which for purposes of this Consent Decree includes numeric action levels ("NAL") in the General Permit, but not averaged over the reporting year, or separately, two (2) NEL exceedances at the Facility for a single parameter subject to NEL requirements); or,

**b.**    Three (3) years from the Effective Date. Defendant shall notify Plaintiff thirty (30) days prior to claiming termination under subparagraph 13(a). In the absence of any ongoing, unresolved dispute, this Consent Decree shall terminate on the Termination Date.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    Storm Water Pollution Control Best Management Practices

14.    Revised Storm Water Pollution Prevention Plan ("SWPPP"): The Defendant shall implement the SWPPP attached as Exhibit A, including the monitoring program described in that SWPPP. As advanced BMP's are installed at the facility, future edits of the SWPPP will be implemented and uploaded to the Waterboards online reporting portal (SMARTS.)  Unless otherwise noted, within

forty-five days of the Effective Date, Defendant shall develop and implement the following BMPs and SWPPP revisions at the Facility:

<u>BMPs</u>:

(a)    Coast Heat shall reroute roof drainage system from neighboring property such that storm water from the neighboring property will not enter the Facility.

(b)    Coast Heat shall remove or cover all abandoned or inutile materials from the Facility and consolidate outdoor storage areas;

(c)    Coast Heat shall increase the frequency of mechanical sweeping to twice per month.

<u>SWPPP update requirements</u>:

(d)    Coast Heat shall investigate and identify all underground water conveyance and discharge points to ensure that they are capped and not discharging storm water;

(e)    Coast Heat shall fully identify all areas of storm water drainage and discharge in the SWPPP and SWPPP map;

(f)    Coast Heat shall fully identify and depict all areas of roof drainage on the SWPPP map;

(g)    Coast Heat shall identify sweeping schedule and mechanical sweeper model in SWPPP;

<u>Advanced BMPs for the Facility</u>: Defendant shall install a treatment system at the Facility that is approved by Waterkeepers. On or before October 1, 2021, Coast Heat Treating shall install and operate a storm water media and chemical based capture and treatment system described in Exhibit B, consistent with the Flow-Based BMP standards from the Permit (Section X.H.)

///

**B.    Sampling at the Facility**

15.    Training, Sampling, and Reporting:  Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by the General Permit and shall train the designated employees to ensure samples are properly collected, stored, and submitted to a certified lab. Defendant shall sample in accordance with the requirements of the General Permit and its SWPPP.

16.    Under this Consent Decree, sampling parameters shall include the following: aluminum, iron, copper, zinc[1], nitrate + nitrite nitrogen, total suspended solids, pH, oil & grease, and chemical oxygen demand.

17.    <u>Monitoring and Reporting:</u> Coast Heat shall develop a monitoring program consistent with the General Permit. During the term of this Consent Decree, Defendant shall collect samples of storm water discharge from Discharge Locations designated as Sample Point 1 and Sample Point 2 until the storm water capture and treatment system is fully implemented and operational, at which time Coast Heat shall only have a single discharge location. Defendant shall collect storm water samples from each Discharge Location from at least four (4) qualified storm events as required by the General Permit (i.e., two Qualifying Storm Events during the first half of the Reporting Year[2] and two Qualifying Storm Events during the second half of the Reporting Year). A Qualifying Storm Event is a storm that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. Any failure to collect samples as required by this Consent Decree shall be documented and

[1] Copper (0.06749 mg/L) and zinc (0.159 mg/L) are the parameters subject to NELs under this Consent Decree; under this Consent Decree copper and zinc are subject to an Action Plan should two (2) NEL exceedances be recorded during a reporting year, or if the annual average for copper or zinc for of all samples taken in a reporting year is over the NAL.

[2] The Reporting Year is defined as July 1 through June 30.

submitted to Waterkeeper by email within five (5) days of the date a sample should have been collected but was not. Defendant shall provide complete laboratory results of all samples collected at the Facility to Waterkeeper within ten (10) days of receiving the results.

### C.    Reduction of Pollutants in Discharges

18.    Numeric Limits: As of the Effective Date, and for the remainder of the term of this Consent Decree, Defendant shall develop an Action Plan proposing measures to achieve compliance with the General Permit and a schedule for implementing any additional management practices that may be necessary if: 1) storm water samples demonstrate an exceedance under the General Permit of the NAL limits or numeric effluent limits ("NEL") pursuant to a Total Maximum Daily Load, Facility-wide for a single parameter in any given reporting year under the Consent Decree, triggering a need for additional evaluation under the General Permit, or 2) if fewer than four samples at the/any Facility discharge point are taken, any sample in excess of the a NAL or NEL will trigger an Action Plan.

19.    Action Plan:  If an Action Plan is required, Defendant shall prepare and submit to Waterkeeper a draft of the Action Plan for the Facility by August 15th of the year in which the requirement for an action plan is triggered.

      **a.**    Action Plan Review: Waterkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**b.** Action Plan Payments: Defendant shall pay One Thousand Dollars ($1,000) each time an Action Plan is submitted to Waterkeeper. Payments shall be made to "Los Angeles Waterkeeper" addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

## D. Visual Observations

20.    Storm Water Discharge Observations: During the life of this Consent Decree, Defendant shall conduct visual observations during the Facility's operating hours during every sampled Qualified Storm Event that produces a discharge at all locations where storm water is discharged from the Facility.

21.    Non-Storm Water Discharge Observations: During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge location.

22.    Visual Observations Records: Defendant shall maintain observation records to document compliance with paragraphs 21 and 22 and shall provide Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from Waterkeeper for those records.

23.    Employee Training Program: Within forty-five days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

**a.** Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all

trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit.

**b.** Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP.

**c.** <u>Sampling Training</u>: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

**d.** <u>Visual Observation Training</u>: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

**e.** <u>Non-Storm Water Discharge Training</u>: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

**f.** <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

**g.** The Defendant shall maintain training records to document compliance with this paragraph and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

**h.** <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within thirty (30) days of the effective date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

24.    <u>SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update</u>: Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree. Defendant agrees to submit the updated SWPPP and MIP to Waterkeeper upon completion for review and comment.

**a.** <u>Review of SWPPP and/or MIP</u>: Waterkeeper shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is no incorporated;

**b.** Defendant shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to Waterkeeper's review and comment as provided in paragraph 24 (a) above.

**c.** The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP or MIP, and any remaining disputes will be

resolved through timely initiation of the dispute resolution procedures in Section IV below.

### E.    Compliance Monitoring and Reporting

25.    Every year during the life of this Consent Decree, Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection for the term of the Consent Decree at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Waterkeeper will provide Defendant with as much notice as possible—but at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 52. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to Waterkeeper. Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

26. <u>Document Provision</u>. During the term of this Consent Decree, Defendant shall notify and submit documents to Waterkeeper as follows:

    **a.**   Defendant shall copy Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

    **b.**   Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to Waterkeeper within three (3) business days of receipt by Defendant. Defendant shall mail paper copies or email electronic copies of documents to Waterkeeper at the relevant notice address contained below.

27. <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree in the amount of Three Thousand Dollars ($3,000.00) each year the Consent Decree is in effect. Such payments shall be made payable to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401, within seven (7) days of the Effective Date, and then at 12-month increments thereafter until the Consent Decree is terminated. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

**F.**    **Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest**

28. <u>Environmental Mitigation Project</u>: To remediate the alleged environmental harms resulting from allegations in the Complaint, Defendant agrees to make a payment of Ten Thousand Dollars ($10,000.00) to the Rose

Foundation. The payments shall be made in twelve monthly installments of Eight Hundred Dollars and Thirty-Three Cents ($833.33), starting on the Effective Date and delivered monthly thereafter by certified mail or overnight delivery made payable to: made payable to the Rose Foundation for Communities and the Environment. Defendant shall provide Waterkeeper with a copy of such payment.

29.    <u>Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Thirty-Two Thousand Dollars ($32,000.00) to Waterkeeper to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payments shall be made in twelve monthly installments of Two Thousand Sixty-Six Hundred Dollars and Sixty-Six Cents ($2,666.66), starting on the Effective Date and delivered monthly thereafter by certified mail or overnight delivery made payable to: Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland CA, 94609.

30.    Defendant shall make a remediation payment of Two hundred fifty Dollars ($250.00) for each missed deadline included in this Consent Decree that is not excused by Waterkeeper in writing to an extension of that particular deadline. Payments for missed deadlines shall be made to: Rose Foundation for Communities and the Environment, ATTN: Los Angeles Waterkeeper v. Coast Heat Treating, 201 4th Street, Ste. 102, Oakland, California 94607. Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline or failure to sample. Defendant shall provide Waterkeeper with a copy of each such payment at the time it is made.

## IV.    Dispute Resolution

31.    This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of

this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

32.   <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution.  The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

33.   <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 32, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

34.   In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.   Mutual Release of Liability and Covenant Not to Sue

35.   <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

36.    <u>Defendant's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

37.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Water Board, Regional Water Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Effective Date.

**VI.    Miscellaneous Provisions**

38.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

39.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

40.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

41.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

42.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

43.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

44.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

45.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

46.    <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

47.    <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

48.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent

Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

49.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

50.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

51.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due

diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

52.   Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Anthony M. Barnes | Exequiel Tostado |
| Aqua Terra Aeris Law Group LLP | Associated Environmental |
| 4030 Martin Luther King Jr. Way | Management |
| Oakland, CA 94609 | 812 Fremont Ave, Ste 100 |
| amb@atalawgroup.com | South Pasadena, CA 91030 |
| | etostado@essociated.com |
| With copies to: | With copies to: |
| Kelly Clark, Senior Staff Attorney | Coast Heat Treating, Co. |
| Los Angeles Waterkeeper | c/o Alejandro Cardona |
| 120 Broadway, Suite 105 | 1767 Industrial Way, Los Angeles, |
| Santa Monica, CA 90401. | CA 90023 |
| kelly@lawaterkeeper.org | cht@att.net |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

53.   If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to

modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.


APPROVED AS TO CONTENT

Dated: May 28, 2021                    By: _____/s/_____
                                            Bruce Reznik
                                            Los Angeles Waterkeeper

Dated: June 2, 2021                    By: _____/s/_____
                                            Alejandro Cardona
                                            Coast Heat Treating, Co.

APPROVED AS TO FORM

Dated: May 25, 2021                    By: _____/s/_____
                                            Anthony M. Barnes
                                            Attorney for Plaintiff
                                            Los Angeles Waterkeeper

Dated: May 26, 2021                    By: _____/s/_____
                                            James T. Jackson
                                            Attorney for Defendant
                                            Coast Heat Treating, Co.

**IT IS SO ORDERED.**


**Dated: August 24, 2021**             _____
                                       **Honorable. John F. Walter**
                                       **United States District Judge**